**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| | § | |
| **v.** | § | **1:14cr33-HSO-BWR-3** |
| | § | **1:20cv261-HSO** |
| | § | |
| **RASAQ ADEROJU RAHEEM** | § | |

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT
RASAQ ADEROJU RAHEEM'S MOTION [1069] TO AMEND;
DENYING DEFENDANT RASAQ ADEROJU RAHEEM'S MOTION [1118]
FOR LEAVE TO FILE A SUPPLEMENTAL REPLY; AND DENYING
DEFENDANT RASAQ ADEROJU RAHEEM'S MOTION [1031] TO VACATE,
SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL
CUSTODY PURSUANT TO 28 U.S.C. § 2255**

BEFORE THE COURT are the following Motions filed by Defendant Rasaq

Aderoju Raheem: (1) Motion [1031] to Vacate, Set Aside, or Correct Sentence by a

Person in Federal Custody pursuant to 28 U.S.C. § 2255; (2) Motion [1069] to

Amend his § 2255 Motion; and (3) Motion [1118] for Leave to File a Supplemental

Reply.  After due consideration of the Motions, related pleadings, the record, and

relevant legal authority, the Court is of the opinion that the Motions [1031], [1069],

[1118], and the files and records of the case conclusively show that Defendant Rasaq

Aderoju Raheem is entitled to no relief, and that all of his Motions [1031], [1069],

[1118], should be denied without an evidentiary hearing.  *See* 28 U.S.C. § 2255(b).

## I.  FACTS AND PROCEDURAL HISTORY

A.    The Second Superseding Indictment [156]

On October 7, 2014, Defendant Rasaq Aderoju Raheem ("Defendant" or

"Raheem"), a citizen of Nigeria who was residing in South Africa, was charged in a Second Superseding Indictment [156] in this case, along with numerous co-Defendants, with three conspiracy charges (Counts 1, 2, and 9) and six different violations of 18 U.S.C. §§ 2 and 1341 (Counts 3 through 8). *See* 2d Superseding Indictment [156] at 4-32. Raheem was part of a conspiracy of "more than 200 members worldwide, with the leadership based in Nigeria and South Africa," which "organization carried out multiple different types of schemes, each of which had the purpose of fraudulently obtaining money or goods from U.S.-based victims." PSR [862] at 15 (filed under seal). Among the fraud schemes perpetrated by the conspirators were romance, advance-check, reshipping, post-label, and account-takeover scams, as well as money laundering. *See id.* at 15-17.

B.   Raheem's jury trial

Raheem and two of his co-Defendants elected to proceed to a jury trial. The jury ultimately convicted Raheem of the crimes charged in Counts 1, 2, 3, 4, 7, and 9 of the Second Superseding Indictment. *See* Verdict Form [788] at 1-8.[1] He was convicted in Count 1 of conspiring to commit mail fraud, wire fraud, and money laundering to unlawfully enrich the conspirators "by conducting multiple complex financial fraud schemes via the internet," including "internet romance scams, fraudulent check scams, bank and credit card account take overs, and work at home scams." 2d Superseding Indictment [156] at 4-26. The charge in Count 1 was punishable by a term of imprisonment of not more than 30 years. *See id.*; 18 U.S.C.

---

[1] Counts 5, 6, and 8 of the Second Superseding Indictment were dismissed during trial, upon the Government's Motion. *See* Order [777] at 1.

§§ 1341, 1343, 1344, & 1349.

Raheem's conviction in Count 2 was for conspiring to commit identify theft as prohibited by 18 U.S.C. § 1028(a)(7), use of unauthorized access devices as prohibited by §§ 1029(a)(3) and 1029(a)(5), and theft of Government funds as prohibited by 18 U.S.C. § 641, all in violation of 18 U.S.C. § 371, and it carried a maximum term of imprisonment of five years. *See* 2d Superseding Indictment [156] at 26-29; 18 U.S.C. §§ 371, 1028, 1029.

With respect to Counts 3, 4, and 7, the jury found that Raheem committed mail fraud by knowingly and unlawfully causing to be delivered by the United States Postal Service and private and commercial interstate and foreign carriers certain items, including 2 BlackBerry Torch smartphones (Count 3), a check for $3,000.00 (Count 4), and a check for $5,400.00. *See* 2d Superseding Indictment [156] at 30-31. Counts 3, 4, and 7 were each punishable by a maximum of 20 years imprisonment. *See id.*; 18 U.S.C. § 1341.

Finally, Raheem was convicted in Count 9 of conspiring to commit offenses against the United States in violation of 18 U.S.C. §§ 1956 and 2. *See* 2d Superseding Indictment [156] at 31-32. Specifically, he knowingly conducted and attempted to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity— bank, wire, and mail fraud. *See id.* at 32. This conviction carried a maximum term of imprisonment of 20 years. *See id.*; 18 U.S.C. § 1956.

3

C.    Raheem's sentencing

In anticipation of sentencing, the United States Probation Office prepared a Presentence Investigation Report ("PSR" or "PSI").  *See* PSR [862] (filed under seal). Based upon a total offense level of 43 and a criminal history category of I, Raheem's Guidelines imprisonment range would have been life.  *See id.* at 65.  However, because the statutorily authorized maximum sentences for each count of conviction combined were less than the maximum of the Guidelines range, the Guidelines range was reduced to 1,380 months.  *See id.* (citing U.S.S.G. § 5G1.2(b)).[2] Following a lengthy sentencing hearing, on May 24, 2017, the Court sentenced Raheem to a total of 1,380 months of imprisonment, consisting of terms of 360 months as to Count 1, 60 months as to Count 2, and 240 months as to each of Counts 3, 4, 7, and 9, all to run consecutively.  *See* J. [878] at 3.

Raheem and his two co-Defendants appealed, and the United States Court of Appeals affirmed in all respects.  *See United States v. Ayelotan*, 917 F.3d 394, 399 (5th Cir.), *as revised* (Mar. 4, 2019).  The United States Supreme Court denied Raheem's petition for a writ of certiorari on October 7, 2019.  *See* Ex. [1010] at 1.

Raheem then filed a Motion [1031] to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255.  *See* Mot. [1031].  The vast majority of the grounds for relief asserted by Raheem are based upon alleged ineffective assistance of counsel by his trial and appellate attorneys.  *See* Mot.

---

[2]  The maximum terms of imprisonment were 30 years for Count 1, five years for Count 2, 20 years for Count 3, 20 years for Count 4, 20 years for Count 7, and 20 years for Count 9, which totaled 95 years or 1,380 months.

[1031]; Mem. [1032].

Accordingly, the Court entered an Order [1033] requiring an affidavit from Raheem's former counsel and an answer by the United States Attorney. *See* Order [1033] at 1-3. Ayelotan's trial counsel, Luke D. Wilson ("Wilson" or "trial counsel"), and his appellate counsel, Damon R. Stevenson ("Stevenson" or "appellate counsel") each filed Affidavits [1045], [1046] in response to the § 2255 Motion. The Government then filed a Response [1063] in opposition, and Raheem has filed a Reply [1068]. Raheem has also filed a Motion [1069] to Amend and a Motion [1118] for Leave to File a Supplemental Reply.

## II. DISCUSSION

A.   Raheem's § 2255 Motion [1031]

Raheem's § 2255 Motion [1031], filed on August 17, 2020, raises eight claims of ineffective assistance of counsel related to his trial and appellate attorneys. *See* Mot. [1031] at 4-8, 13-20; Mem. [1032] at 3-8. Raheem also alleges that the Court "lacked subject-matter jurisdiction on several of the offences [sic] charged in the Indictment which tainted the entire proceeding." Mot. [1031] at 15. He asks that the Court "vacate and set aside the offenses that are outside this Court's jurisdiction," and that the Court vacate and remand the remaining counts for a new trial. Mem. [1032] at 9. In the alternative, Raheem requests that the Court resentence him such that the sentences on his counts of convictions be "vacated, set aside, and corrected" by running them concurrently, rather than consecutively. *See id.*

5

B.   <u>Raheem's Motion [1069] to Amend</u>

Over 17 months after the Supreme Court denied Raheem's petition for certiorari, *see* Ex. [1010] at 1, and over seven months after he filed his § 2255 Motion [1031], Raheem filed a Motion [1069] to Amend Grounds Two through Five of his § 2255 Motion [1031], *see* Mot. [1069] at 2.   He seeks to argue that venue was not appropriate in this Court. *See id.* at 2-3.

In considering whether to permit Raheem to file an amendment to his original § 2255 Motion [1031], the Court notes that the Motion [1069] to Amend was filed well beyond Raheem's deadline for filing a timely § 2255 Motion.   For the Court to consider the proposed amendments, Raheem must therefore demonstrate that his Motion [1069] to Amend "'relates back' to the original filing" under Federal Rule of Civil Procedure 15(c). *United States v. Cardenas,* 13 F.4th 380, 385 (5th Cir. 2021), *cert. denied*, 211 L. Ed. 2d 616 (Jan. 24, 2022).   An amendment relates back to an original § 2255 Motion if it "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).   "[A]mendments do not relate back if they assert a 'new ground for relief supported by facts that differ in both time and type from those the original pleading set forth.'" *United States v. Gonzalez*, 592 F.3d 675, 679 (5th Cir. 2009) (quoting *Mayle v. Felix*, 545 U.S. 644, 650 (2005)).

To the extent Raheem's Motion [1069] to Amend advances new claims that do not relate back under Rule 15(c)(1)(B), they are untimely, and the Motion [1069] should be summarily denied on this basis. *See id.*; 28 U.S.C. § 2255(f)(1).   To the

extent the Motion [1069] to Amend merely clarifies the § 2255 Motion [1031] or asserts a claim or defense that arose out of the conduct, transactions, or occurrences set out or attempted to be set out in the original Motion [1031], the Court will consider those claims in conjunction with resolving Raheem's § 2255 Motion [1031] as it addresses each ground raised in the original § 2255 Motion [1031].  *See* Fed. R. Civ. P. 15(c)(1)(B).  And, as the Court concludes hereinafter, any of Raheem's claims that may relate back under Rule 15(c) should be denied on their merits without an evidentiary hearing.

C.   Raheem's Motion [1118] for Leave to File a Supplemental Reply

Over a year after he filed his original Reply [1068], Raheem filed a grossly untimely Motion [1118] for Leave to File a Supplemental Reply.  *See* Reply [1068]; Mot. [1118].  Raheem has not articulated why he could not have raised the arguments made in his Motion [1118] for Leave to File a Supplemental Reply in either his § 2255 Motion [1031] or his original Reply [1068], *see* Mot. [1118], and the Rules Governing Section 2255 Proceedings for the United States District Courts (the "§ 2255 Rules") contemplate only a single reply, *see* Rule 5(e) of § 2255 Rules. Raheem's Motion [1118] for Leave to File a Supplemental Reply will therefore be denied.

Raheem's Motion [1118] does cite one Fifth Circuit opinion issued after Raheem filed his original Reply [1068].  *See id.* at 2 (citing *United States v. Deckert*, 993 F.3d 399, 404 (5th Cir. 2021)).  To the extent the Motion [1118] to supplement could be construed as a notice of supplemental authority, the Court will consider

7

*Deckert* to the extent it is relevant in resolving Raheem's original § 2255 Motion

[1031].

D.    Analysis of Raheem's original § 2255 Motion [1031]

1.    Relevant legal standards

A prisoner may move to vacate, set aside, or correct his conviction or sentence

under 28 U.S.C. § 2255 on any one of four grounds: (1) the sentence was imposed in

violation of the Constitution or laws of the United States; (2) the court was without

jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum

sentence; or (4) the sentence is otherwise subject to collateral attack.  28 U.S.C.

§ 2255(a).  Upon a finding that any one of these four grounds are present, a court

"shall vacate and set the judgment aside and shall discharge the prisoner or

resentence him or grant a new trial or correct the sentence as may appear

appropriate."  28 U.S.C. § 2255(b).

After the Government answers a § 2255 motion, the district court reviews the

motion, the answer, any transcripts, and the record to determine whether an

evidentiary hearing is warranted.  *See* Rule 8 of § 2255 Rules.  "A § 2255 motion

requires an evidentiary hearing unless either (1) the movant's claims are clearly

frivolous or based upon unsupported generalizations, or (2) the movant would not be

entitled to relief as a matter of law, even if his factual assertions were true."  *United*

*States v. Harrison*, 910 F.3d 824, 826-27 (5th Cir. 2018), *as revised* (Dec. 19, 2018);

*see also United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992) ("A motion

brought under 28 U.S.C. § 2255 can be denied without a hearing only if the motion,

files, and records of the case conclusively show that the prisoner is entitled to no relief."). However, "[c]onclusory allegations, unsubstantiated by evidence, do not support the request for an evidentiary hearing." *United States v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013); *see also United States v. Palacios*, 928 F.3d 450, 455 (5th Cir. 2019).

Raheem's original § 2255 Motion consists primarily of ineffective assistance of counsel claims. "[A] claim of ineffective assistance of counsel is properly made in a § 2255 motion because it raises an issue of constitutional magnitude and, as a general rule, cannot be resolved on direct appeal." *United States v. Bass*, 310 F.3d 321, 325 (5th Cir. 2002). To demonstrate ineffective assistance of counsel, a defendant must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that counsel's ineffective assistance was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). "Failure to establish either prong defeats the claim." *Tucker v. Johnson*, 115 F.3d 276, 280 (5th Cir. 1997).

"For the deficiency prong, counsel's performance is to be accorded 'a heavy measure of deference.'" *United States v. Rivas-Lopez*, 678 F.3d 353, 357 (5th Cir. 2012) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 197 (2011)). To show prejudice, "*Strickland* asks whether it is 'reasonably likely' the result would have been different." *Harrington v. Richter*, 562 U.S. 86, 111 (2011). "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S.

at 694. The Supreme Court has defined a reasonable probability as a "probability sufficient to undermine confidence in the outcome." *Cullen*, 563 U.S. at 189 (quoting *Strickland*, 466 U.S. at 694). "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112.

2.   Raheem's claims

Raheem claims that his trial and appellate counsel were ineffective by allegedly:

- "assuming that the Court could sentence Petitioner consecutively" by grouping offenses under United States Sentencing Guidelines ("U.S.S.G.") § 3D1.2 (Ground One);
- "failing to object to calculated conduct outside the Court's jurisdiction" (Ground Two);
- "failing to move for dismissal of the offences [sic] outside the district court's jurisdiction" under Federal Rule of Criminal Procedure 12(b)(2) (Ground Three);
- "failing to raise the district court's lack of jurisdiction on appeal" (Ground Four);
- "failing to challenge the sentencing court's abandonment of required individualized findings" (Ground Six);
- "failing to properly review[ ] the PSI with Petitioner" (Ground Seven);
- "failing to cross examine and impeach one of government's key witnesses at trial" (Ground Eight); and
- failing "to provide Petitioner with the copies of trial transcripts, sentencing transcripts and documents of other proceedings" (Ground Nine).

*See* Mot. [1031] at 4-8, 13-20; Mem. [1032] at 3-8. Raheem also advances a claim in Ground Five of his Motion [1031] that the Court "lacked subject-matter jurisdiction on several of the offences [sic] charged in the Indictment which tainted the entire proceeding." Mot. [1031] at 15.[3]

---

[3] In his Motion [1069] to Amend, Raheem states that in "Ground[s] 2-5," he referred to lack of jurisdiction "but was arguing 'improper venue.'" Mot. [1069] at 1. Raheem insists that "the Court should construe his jurisdiction argument as 'improper venue.'" *Id.*

3.  Ground One: Trial counsel's failure to challenge imposition of consecutive sentences under U.S.S.G. § 3D1.2

a.  Raheem's claims

Raheem asserts that his trial counsel was ineffective "by inviting the error, assuming that the Court could sentence Petitioner consecutively" by grouping the offenses of conviction in Counts 1, 2, 3, 4, and 7 under U.S.S.G. § 3D1.2.  Mot. [1031] at 4, 13 (citing PSR ¶77).  Raheem argues that his terms of imprisonment should have run concurrently, meaning that the statutory maximum total term of imprisonment should have been 360 months, not 1,380 months.  *See id.* at 13.   He contends that his trial counsel's failure to recognize this error fell below an objective standard of reasonableness and prejudiced him.  *See id.*; Mem. [1032] at 3; Reply [1068] at 1-3.

Raheem's trial counsel responds that "the sentencing Judge did not act improperly" under the Guidelines and that as counsel he "had no proper objection to make."  Aff. [1045] at 2 (citing U.S.S.G. § 5G1.2(D)).  The Government responds that because Raheem's total offense level of 47 exceeded the maximum offense level of 43 under the Guidelines, his total offense level was reduced to 43, which called for a term of life imprisonment.  *See* Resp. [1063] at 5.  In light of the statutory maximum sentences for each Count of conviction, U.S.S.G. § 5G1.2(d) directed that the sentences were properly run consecutively in order to achieve a life sentence.  *See id.* at 5-6.

b.  Analysis

Raheem conflates the grouping of counts for purposes of determining a

11

defendant's offense level under U.S.S.G. § 3D1.2 (2016) with the ordering of consecutive sentences for multiple counts of conviction under § 5G1.2 (2016).[4] Under the Guidelines, a court must first determine a defendant's Guidelines imprisonment range based upon his adjusted offense level and criminal history category, and then decide the appropriate "total punishment" or "combined length of the sentences." U.S.S.G. § 5G1.2 app. n.1 (2016).

Because the maximum punishment for the Count of conviction carrying the highest statutory maximum in Raheem's case, Count 1 (360 months), was less than the total punishment called for under the Guidelines (life imprisonment), the Court ordered consecutive sentences "only to the extent necessary to produce a combined sentence equal to the total punishment." U.S.S.G. § 5G1.2(d) (2016). As trial counsel acknowledges, the Guidelines were, in fact, properly calculated, and he "had no proper objection to make." Aff. [1045] at 2. Any objection to this procedure would have been frivolous, *see* U.S.S.G. § 5G1.2(d) (2016), and failure to make a frivolous objection cannot constitute ineffective assistance of counsel, *see United States v. Preston*, 209 F.3d 783, 785 (5th Cir. 2000); *see also Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998) (holding that "failure to make a frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness"). Nor does prejudice issue from such a meritless objection because the result of the proceeding would not have different had it been raised. *See United States v. Kimler*,

---

[4] U.S.S.G. §§ 3D1.2 and 5G1.2 were not substantively amended between the 2013 version of the Guidelines in effect when Raheem was indicted and the 2016 one in effect when he was sentenced. *Compare* U.S.S.G. §§ 3D1.2 and 5G1.2 (2016), *with* U.S.S.G. §§ 3D1.2 and 5G1.2 (2013).

167 F.3d 889, 893 (5th Cir. 1999); *Smith v. Puckett*, 907 F.2d 581, 585 n. 6 (5th Cir. 1990).  As such, Raheem cannot show either prong of an ineffective assistance of counsel claim as to Ground One.

4.   <u>Grounds Two through Five:  Lack of jurisdiction or improper venue</u>

a.   <u>Raheem's claims</u>

Grounds Two through Five of Raheem's § 2255 Motion all turn upon the Court's purported lack of jurisdiction, *see* Mot. [1031] at 5-8, 14-15, or what he now argues was an inappropriate venue, *see* Mot. [1069] at 2-3.  Raheem complains that some of the conduct at issue occurred outside this District, including in Pennsylvania, South Carolina, and Iowa, and that his trial and appellate counsel should have challenged the Court's jurisdiction (or venue).  *See* Mot. [1031] at 5-8, 14-15 (citing Fed. R. Civ. P. 12(b)(2)).

Trial counsel responds that, "[w]hile Mr. Raheem styles his argument as a jurisdictional one, a reading of his grounds makes clear that he is actually arguing 'venue.'" Aff. [1045] at 2.  Trial counsel states that because "in a conspiracy case venue lies in any district where an overt act was performed or through which a conspirator passed to accomplish an overt act," and "overt acts were committed by Mr. Raheem's conspiracy in the Southern Division of the Southern District of Mississippi, venue in the Southern Division of the Southern District was proper." *Id.* (citing *United States v. Cabrales*, 524 U.S. 1, 7 (1998)).  Therefore, "there was no relief for which [he] could ask." *Id.* at 3.  Appellate counsel avers that he "raised the issues on appeal that [he] felt were most likely to be seriously considered by the

appellate court based on [his] research of the issues." Aff. [1046] at 1.

The Government responds that the Court had jurisdiction to hear the charges brought against Raheem. *See* Resp. [1063] at 4 (citing 18 U.S.C. §§ 3231 & 3237). To the extent venue is the issue, "overt acts set out in the indictment reflect proper venue in the Southern District of Mississippi" because it is "a district in which each and every charged conspiracy and scheme was begun, continued or completed." *Id.* at 5 (citing 18 U.S.C.§ 3237).

b.    Whether jurisdiction was proper

"The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." 18 U.S.C. § 3231. The jury convicted Raheem of the crimes charged in Counts 1, 2, 3, 4, 7, and 9 of the Second Superseding Indictment, all of which were federal crimes. *See* Verdict Form [788] at 1-8. Raheem was convicted in Count 1 of conspiring to commit mail fraud, wire fraud, and money laundering in violation of 18 U.S.C. §§ 1341, 1343, 1344, & 1349; in Count 2 for conspiring to commit identify theft as prohibited by 18 U.S.C. § 1028(a)(7), use of unauthorized access devices as prohibited by 18 U.S.C. §§ 1029(a)(3) and 1029(a)(5), and theft of Government funds as prohibited by 18 U.S.C. § 641, all in violation of 18 U.S.C. § 371; in Counts 3, 4, and 7 of separate instances of mail fraud in violation of 18 U.S.C. § 1341; and in Count 9 of conspiring to commit offenses against the United States in violation of 18 U.S.C. §§ 1956 and 2. *Id.*; 2d Superseding Indictment [156] at 4-32.

Raheem was therefore convicted of offenses against the laws of the United

States, *see* Verdict Form [788] at 1-8; 2d Superseding Indictment [156] at 4-32, and as such, this Court plainly had jurisdiction over all counts of the Second Superseding Indictment, *see* 18 U.S.C. § 3231.  Any objection by Raheem's counsel to the Court's jurisdiction would have been frivolous and cannot support an ineffective assistance of counsel claim.  *See Preston*, 209 F.3d at 785; *Kimler*, 167 F.3d at 893; *Green*, 160 F.3d at 1037; *see also United States v. Merritt*, 24 F.3d 240, 1994 WL 242561, at *3 (5th Cir. May 24, 1994) (holding that, because a defendant's argument was frivolous, "his attorney's failure to raise it on appeal does not amount to ineffective assistance of counsel").

c.   <u>Whether venue was proper</u>

"A defendant's right to be tried in the district in which the crime allegedly took place finds its roots in both the Constitution and federal statutory law." *United States v. Kiekow*, 872 F.3d 236, 243 (5th Cir. 2017) (quotation omitted).  The Fifth Circuit has stated that, on direct appeal, it "will affirm a verdict if, viewing all the evidence in the light most favorable to the government, a rational jury could conclude, from the evidence presented at trial, that the government established venue by a preponderance of the evidence."  *Id.* (quotation omitted).

For multi-district crimes like those for which Raheem was convicted, 18 U.S.C. § 3237(a) provides that "any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed."  18 U.S.C. § 3237(a).  "Any offense involving the use of

the mails . . . is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such . . . mail matter . . . moves." *Id.* "In conspiracy cases, venue is proper in any district where the agreement was formed or an overt act occurred. An overt act is an act performed to effect the object of a conspiracy." *Kiekow*, 872 F.3d at 243 (quotation omitted); *see also, e.g., United States v. Parks*, 119 F. App'x 593, 599 (5th Cir. 2004) ("Under § 3237(a), [a defendant] can be prosecuted in any district in which the conspiracy began, continued, or was completed, even if he has never set foot in that district.").

      i.     Counts 1, 2, and 9

     This District is one in which each conspiracy charged in Counts 1, 2, and 9 was begun, continued, or completed, meaning that venue was proper here pursuant to 18 U.S.C. § 3237(a), as at least one overt act for each conspiracy charged in Counts 1, 2 and 9 occurred in this District. *See* 18 U.S.C. § 3237(a); *Kiekow*, 872 F.3d at 243; 2d Superseding Indictment [156] at 4-29, 31-32. For example, Counts 1, 2, and 9 all alleged that on or about October 27, 2012, Raheem shipped a fraudulent balance transfer check via United Parcel Service to victim N.J. in this District, and that on or about December 14, 2011, Raheem sent at least three emails to N.J. related to the counterfeiting of a check made payable to N.J. which contained instructions for receiving a $3,000.00 check via FedEx in this District. Superseding Indictment [156] at 11, 16.[5] The charging instrument further alleged

---

[5] These allegations are contained in Count 1 of the Second Superseding Indictment, specifically paragraphs 76 and 80. *See* 2d Superseding Indictment [156] at 11, 16. Count

that Raheem provided N.J. with the FedEx tracking number associated with the check and instructed her on how to deposit the check and transfer the proceeds. *Id.* at 16.

Counts 1, 2 and 9 also charged that Raheem's co-conspirators created a fraudulent AT&T account and immediately purchased two smartphones with a stolen credit card and had the phones shipped to N.J.'s home in this District, and that a co-conspirator emailed Raheem shipping labels purchased with another compromised credit card in order to re-ship the phones to South Africa. *Id.* at 18. On or about September 28, 2011, Raheem forwarded the email with the shipping labels to N.J. in this District, with instructions to N.J. on how to re-ship the fraudulently obtained smartphones to South Africa. *Id.* At trial, the Government presented evidence supporting these allegations and their connections to this District. *See, e.g.,* Tr. [927] at 414-19; Tr. [928] at 478-79; Tr. [930] at 1020-22; Tr. [931] at 1122-24, 80; Tr. [932] at 1503-04; Ex. G-9.005; Ex. G-80.022; Ex. G-80.023; Ex. G-80.024; Ex. G-82.041.

Because the Second Superseding Indictment charged, and the Government presented evidence sufficient for the jury to conclude by a preponderance of the evidence, that at least one overt act was performed in this District to effect the object of each of the conspiracies charged in Counts 1, 2 and 9, venue was properly

---

2 states that, "[i]n furtherance of the conspiracy and to carry out its objectives, the acts described in paragraphs one through ninety-two are re-alleged and incorporated as if set forth herein." *Id.* at 29. Likewise, in Count 9, the Second Superseding Indictment states that "[t]he manner and means used to accomplish the objectives of the conspiracy included, among others, all of the acts described in paragraphs one through ninety-seven of this indictment." *Id.* at 31.

laid here. *See Kiekow*, 872 F.3d at 243. It would have been frivolous for either

Raheem's trial or appellate counsel to raise this issue, meaning that failure to object

to improper venue as to Counts 1, 2, and 9 cannot support an ineffective assistance

of counsel claim. *See Preston*, 209 F.3d at 785; *Green*, 160 F.3d at 1037; *Merritt*,

1994 WL 242561, at *3.

ii.    Counts 3, 4, and 7

In Counts 3, 4, and 7 of the Second Superseding Indictment, Raheem was

convicted of separate mail fraud charges in violation of 18 U.S.C. § 1341. *See*

Verdict Form [788] at 7-8; 2d Superseding Indictment [156] at 30-31. The Second

Superseding Indictment charged that Raheem and his co-Defendants

> aided and abetted by each other and with others known and unknown
> to the grand jury, did knowingly devise and intend to devise a scheme
> and artifice to defraud and to obtain money or property by means of false
> and fraudulent pretenses and representations, and for the purpose of
> executing and attempting to execute the scheme, knowingly and
> unlawfully causing to be delivered by the United States Postal Service
> and private and commercial interstate and foreign carriers matters
> according to the directions thereon, . . . by the United States Postal
> Service and Federal Express, to the persons/entities whose names and
> cities of residence are listed below, each constituting a separate count
> herein . . . .

*Id.* at 30. These included matters addressed to N.J. in Biloxi, Mississippi, which is

in this District, including two smartphones (Count 3); a $3,000.00 check (Count 4);

and a $5,400.00 check (Count 7). *Id.* at 30-31.

At trial, the Government presented evidence sufficient for the jury to find

Raheem guilty on each of these charges beyond a reasonable doubt, and to find by a

preponderance of the evidence that the mail matters as charged in each of Counts 3,

4, and 7 were moved into this District. *See* 18 U.S.C. § 3237(a); *Kiekow*, 872 F.3d at 243; Verdict Form [788]; *see also, e.g.,* Tr. [927] at 414-19; Tr. [928] at 478-79; Tr. [929] at 653-57, 782-84; Tr. [930] at 905-06; Ex. G-76.062; Ex. G-80.036; Ex. G-82.033; Ex. G-82.034; Ex. G-82.035; Ex. G-82.036; Ex. G-82.037; Ex. G-82.039. Venue for Counts 3, 4, and 7 was therefore proper in this District, *see* 18 U.S.C. § 3237(a), and any ineffective assistance of counsel claim based upon failure to raise a frivolous objection to venue for Counts 3, 4, and 7 necessarily fails, *see Preston*, 209 F.3d at 785; *Green*, 160 F.3d at 1037; *Merritt*, 1994 WL 242561, at *3.

In sum, to the extent that Grounds Two through Five of Raheem's § 2255 Motion are based on either lack of jurisdiction or venue, they lack merit, and jurisdiction and venue were proper in this District as to each Count of conviction. Any objection by Raheem's counsel to jurisdiction or venue would have been frivolous. Therefore, Raheem's ineffective assistance of counsel claims based upon failure to raise such a frivolous objection necessarily fails. *See Preston*, 209 F.3d at 785; *Green*, 160 F.3d at 1037. Nor can Raheem demonstrate prejudice because it is not reasonably likely that the result of the proceeding would have been different had his counsel raised frivolous objections regarding lack of jurisdiction or venue. *See Harrington*, 562 U.S. at 111; *Kimler*, 167 F.3d at 893. Grounds Two through Five, to the extent they relate to jurisdiction or venue, should be denied without an evidentiary hearing.

5.    <u>Ground Six:  Counsel's failure to object to the Court not making individualized findings</u>

a.    <u>Raheem's argument</u>

Raheem contends that counsel was ineffective in failing to challenge the Court's purported "abandonment of required individualized findings" for purposes of sentencing.  Mot. [1031] at 16.  According to Raheem, although the PSR concluded there was a total loss amount of $55,354,756.71, "[a] portion of that amount was from the [$]29,000,000 that the Probation Officer confirmed had nothing to do with Petitioner," *id.* (citing PSR at ¶39(b)), and which was not reasonably foreseeable to him, Mem. [1032] at 5.  "Roughly $26,000,000 of that figure is attributed to co-defendants Gabriel Oludare Adeniran, Emmanuel Adeniyi Osokomaiya, and Susan Ann Villeneuve; the remainder is attributable to codefendants Genoveva Farfan and Oladimeji Seun Ayelotan."  Mot. [1031] at 16.  Raheem insists that "the amount attributed to Petitioner in his role of crime committed within the Southern District of Mississippi . . . does not exceed $5,000."  *Id.* at 16-17.  He argues that, had counsel raised this objection, his Guidelines range of imprisonment would have only been 37-46 months.  *Id.* at 17

Trial counsel responds that "if one conspirator commits a crime in furtherance of a conspiracy and this crime was reasonably foreseeable, each conspirator can be vicariously held responsible for the crimes of his co-conspirators."  Aff. [1045] at 4 (citing *Pinkerton v. United States*, 328 U.S. 640, 645 (1946); U.S.S.G. § 1B1.3).  Because Raheem "was properly held responsible for the full amount," trial counsel explains that "there was nothing for [him] to challenge on this specific

ground."  *Id.*

b.    Analysis

    i.    Relevant legal authority

To determine Raheem's offense level under the Guidelines, the Court had to

calculate the amount of loss attributable to him.  *See* U.S.S.G. § 2B1.1(b)(1) (2016).

"The court need only make a reasonable estimate of the loss."  U.S.S.G. § 2B1.1 app.

n.3(C) (2016).  In making this determination, a court must consider a defendant's

"relevant conduct."  U.S.S.G. § 1B1.3 (2016).  This includes:

> (1) (A) all acts and omissions committed, aided, abetted, counseled,
> commanded, induced, procured, or willfully caused by the defendant;
> and
> (B) in the case of a jointly undertaken criminal activity (a criminal
> plan, scheme, endeavor, or enterprise undertaken by the defendant
> in concert with others, whether or not charged as a conspiracy), all
> acts and omissions of others that were—
>> (i)    within the scope of the jointly undertaken criminal activity,
>> (ii)   in furtherance of that criminal activity, and
>> (iii)  reasonably foreseeable in connection with that criminal
>> activity;
> that occurred during the commission of the offense of conviction, in
> preparation for that offense, or in the course of attempting to avoid
> detection or responsibility for that offense . . . .

*Id.* § 1B1.3(a)(1).[6]  After the Court resolved the objections lodged by Raheem's

counsel and those of his co-Defendants at sentencing, it determined that a total loss

amount of $52,150,553.71 was reasonably foreseeable, and thus attributable, to

---

[6] There were some amendments to U.S.S.G. §§ 1B1.3(a) and 2B1.1(b)(1) between the date of
Raheem's indictment in 2014 and the 2016 Guidelines Manual in effect when he was
sentenced.  However, there do not appear to be any *ex post facto* concerns.  *See* U.S.S.G.
§ 1B1.11.  Indeed, the offense level increase under § 2B1.1(b)(1) based upon the amount of
loss was more favorable in the later version used at sentencing.  *Compare* U.S.S.G.
§ 2B1.1(b)(1) (2016) (22 level offense increase for losses exceeding $25,000,000.00), *with*
U.S.S.G. § 2B1.1(b)(1) (2013) (22 level increase for losses exceeding only $20,000,000.00).

Raheem under the doctrine of relevant conduct, *see* Tr. [951] at 247-48, which

increased Raheem's offense level by 22 levels, *see* U.S.S.G. § 2B1.1(b)(1) (2016).

    ii.    Discussion

    Raheem's claim that his trial counsel was ineffective when he failed to object

to the Court's calculation of intended loss is simply not correct. *See* Mot. [1031] at

16; Mem. [1032] at 5. Trial counsel submitted written objections stating that "the

PSR seeks to hold Mr. Raheem accountable for loss and/or laundered proceeds in

the amount of $55,354,756.71. We object to this figure." Obj. [862-2] at 1 (filed

under seal). He argued that the calculation could not be "purely speculative," and

that the Court had to make a "fact specific, case-by-case inquiry into the defendant's

intent in determining intended loss." *Id.* (quotation omitted). The record

conclusively demonstrates that Raheem's counsel was not ineffective in failing to

raise any objection to the Court's purported failure to make individualized findings

on the loss calculation, because he did in fact object. *See* Obj. [862-2] at 2 (filed

under seal). As such, counsel's representation did not fall below an objective

standard of reasonableness as to this issue, nor can Raheem show prejudice. *See*

*Strickland,* 466 U.S. at 687-88.

    To the extent that counsel did not specifically object to the $29,000,000.00

figure that Raheem now says was not reasonably foreseeable to him, the Court finds

this particular objection would have been frivolous. *See* Mot. [1031] at 16; Mem.

[1032] at 5. Raheem's statement in his § 2255 Motion that these losses had "nothing

to do with [him]," Mot. [1031] at 16, is plainly belied by the record. At the

sentencing hearing, the Court, which had heard all of the evidence and testimony throughout the lengthy trial and at sentencing, resolved the objections lodged by Raheem's counsel and those of his co-Defendants, and it determined that a total loss amount of $52,150,553.71 was attributable to Raheem under the doctrine of relevant conduct. *See* Tr. [951] at 247-48; U.S.S.G. § 1B1.3(a)(1) (2016). This included the $29,000,000.00 to which Raheem now refers. *See* Mot. [1031] at 16; Mem. [1032] at 5. Any specific objection to the $29,000,000.00 would therefore have been frivolous, and failure to make a frivolous objection could not have constituted ineffective assistance of counsel. *See Preston*, 209 F.3d at 785; *Green*, 160 F.3d at 1037.

Moreover, as the Court stated at the sentencing hearing,

> in the event it erred in treating any of the guidelines or calculating them or otherwise resolving objections, the Court would have imposed the same sentence as a variance or nonguideline sentence based upon the offense conduct in this case, the characteristics of the defendant, and the other factors found at Title 18, United States Code, Section 3553. . . .

Tr. [951] at 294. Thus, even if counsel had failed to object to the loss calculations, there was no prejudice to Raheem. *See id.*; *Strickland,* 466 U.S. at 687-88. The record conclusively shows that Raheem is entitled to no relief on this theory. *See Harrison*, 910 F.3d at 826-27; *Bartholomew*, 974 F.2d at 41.

6. Ground Seven: Counsel's alleged failure to review the PSR with Raheem

a. Raheem's claims

Ground Seven asserts that Raheem's trial counsel was ineffective "for failing to properly review[ ] the PSI with [him]," and "[i]f not for the counsel's failure . . . ,

23

the outcome of Petitioner's sentencing and appellate proceedings would have been different." Mot. [1031] at 17.  Raheem references correspondence he sent to counsel. *See id.*  The handwritten letter he attaches is addressed to trial counsel and is purportedly dated May 1, 2017, even though there is no indication if or when it was ever mailed. Ex. [1032-1] at 1-2 (beginning "Hello Mr. Wilson").  The letter indicated that Raheem had not heard from counsel since a visit on April 4, 2017, and with sentencing approaching in three weeks, Raheem stated that "I really need to have a clue to what your plans are and to things you have already worked on, on the PSI and so on." *Id.* at 1.  According to Raheem, "I have so much concern about not been [sic] able to go through that PSI." *Id.*

In response, trial counsel avers that he and Raheem "met specifically to discuss the PSR on April 4, 2017, for approximately an hour, and "met again on May 20, 2017, to discuss Probation's response to [their] objections." Aff. [1045] at 4. Counsel further states that,

> [d]espite Mr. Raheem's assertion to the contrary, this was more than enough time to go over the PSR with him. The reality of the situation is that a PSR review is a highly technical exercise in the application of the Sentencing Guidelines to the facts as found by the jury.  Mr. Raheem's "insight" on this type of matter adds nothing to Counsel's task of legally analyzing the Guidelines, making objections to the PSR, and arguments to the Sentencing Court. Mr. Raheem was consulted, but a lengthy consultation was not required given the purely legally technical task at hand.

*Id.*

b.   Analysis

The record reflects that Raheem agrees that his trial counsel met with him on

April 4, 2017, which was about seven weeks prior to sentencing, and he does not dispute that they discussed the PSR.  *See* Mot. [1031] at 17.  Raheem offers only conclusory allegations that his trial counsel "failed to *properly* review the PSI with [him]," and that if counsel had done so, "the outcome of Petitioner's sentencing and appellate proceedings would have been different."  *Id.*  (emphasis added).  Raheem does not explain what was purportedly "improper" about his counsel's review of the PSR or how a "proper" review would have changed the outcome at sentencing.  *Id.*  "Conclusory allegations, unsubstantiated by evidence, do not support the request for an evidentiary hearing."  *Reed*, 719 F.3d at 373.  Ground Seven of Raheem's § 2255 Motion [1031] should therefore be denied without an evidentiary hearing.  *See id.*

7.    Ground Eight:  Trial counsel's failure to cross-examine and impeach one of the Government's witnesses

a.    Raheem's claims

Raheem claims that his trial counsel was "ineffective for failing to cross examine and impeach one of government's key witnesses at trial," co-Defendant Teslim Kiriji.  Mot. [1031] at 18.   Raheem maintains that "counsel was aware Kiriji possessed exculpatory information as it connected to Petitioner on Count 7."  *Id.*  Raheem contends that even though "[t]here was no correspondence between the Petitioner and the witness," the Government "elicited testimony in a way that created the inference that the offences [sic] were directly committed by Petitioner, which Kiriji masterminded and Petitioner was convicted and sentence for 20 years on this Count," making cross-examination of Kiriji "that much more important."  *Id.*  According to Raheem, "[b]y refusing to cross examine and impeach Teslim Kiriji,

counsel essentially 'shifted the burden' over to the defense." Mem. [1032] at 6

(citing *Winston v. Pearson*, 683 F.3d 489, 505-06 (4th Cir. 2012)). Raheem alleges

that trial counsel's failure to cross-examine and impeach Kiriji "prejudiced

Petitioner before the jury and the district court because it could have substantially

resulted in a different result of the proceedings if not for this error." Mot. [1031] at

18.

> Trial counsel responds that,
>
> Mr. Raheem fails to state with any specificity what "exculpatory evidence" Kiriji possessed that could have proven Mr. Raheem's innocence. Indeed, if any such evidence existed Counsel was, and am, unaware of it. Had Counsel any such knowledge Counsel certainly would have exploited it to the best of his ability for the benefit of Mr. Raheem.
>
> In fact, throughout the discovery Counsel received regarding Mr. Kiriji, Mr. Raheem's name was never mentioned; nor did Mr. Kiriji mention Mr. Raheem while testifying. Therefore, when Mr. Kiriji took the stand it was Counsel's stategic [sic] determination that the best course of action would be to not cross-examine him at all in an effort to keep Mr. Raheem out of the minds of the jurors as much as possible. In hindsight, could Counsel have crossed Mr. Kiriji regarding his lack of knowledge of Mr. Raheem? Yes, certainly. But even with the benefit of hindight [sic], Counsel believes that foregoing the opportunity to cross Mr. Kiriji was the better strategic move.

Aff. [1045] at 5.

b.    Analysis

Raheem offers vague and conclusory assertions that "exculpatory

information" existed concerning Count 7 that could have been brought out had his

counsel cross-examined Kiriji. Mot. [1031] at 18. However, "[c]onclusory

allegations, unsubstantiated by evidence, do not support the request for an

evidentiary hearing." *Reed*, 719 F.3d at 373.   Raheem's "unsupported

generalizations" in this regard do not warrant a hearing. *Palacios*, 928 F.3d at 455.

Moreover, Raheem cannot demonstrate prejudice, which precludes any

ineffective assistance of counsel claim. *See Strickland,* 466 U.S. at 687-88; *Tucker*,

115 F.3d at 280.   Raheem does not feign actual innocence.   Instead, he contends

that "[t]here was no correspondence between" him and Kiriji, and that Kiriji

"masterminded" the crime charged at Count 7.   Mot. [1031] at 18.

Count 7 involved a mail fraud charge. *See* 2d Superseding Indictment [156]

at 30-31.   The evidence the Government introduced of Raheem's guilt on Count 7

was overwhelming, including exhibits and witness testimony other than Kiriji's.

*See, e.g.,* Tr. [933] at 1607-12 (Agent Todd Williams' testimony concerning a

fraudulent $5,400.00 balance transfer check and Raheem's involvement, including

sending it to Agent Williams, who had taken over victim N.J.'s email account and

had given Raheem an address for an undercover mailbox); Ex. G-76.009 (email from

Raheem to N.J.'s email address with instructions to type co-Defendant Dennis

Ladden's name on the check as payee and re-ship the check to an address for

Ladden); Ex. G-76.013 (e-mail from Raheem to N.J.'s email address directing her to

"use USPS rush mail" and providing her a tracking number).   Based upon the

evidence, whether Kiriji or anyone other than Raheem "masterminded" the crime

that Raheem committed is irrelevant to his own guilt on the charge in Count 7.

Because Raheem cannot show prejudice in this regard, this ineffective assistance

claim necessarily fails. *See Strickland,* 466 U.S. at 687-88; *Tucker*, 115 F.3d at 280.

In sum, Ground Eight of Raheem's Motion [1031] offers mere conclusory allegations concerning the discovery of exculpatory evidence had his trial counsel cross-examined his co-Defendant Kiriji. The Motion [1031] does not contain facts from which one could conclude that had trial counsel cross-examined Kiriji, there is a reasonable probability that the result of the proceeding would have been different. Nor can Raheem demonstrate prejudice. *See* Mot. [1031]; *Strickland*, 466 U.S. at 694. Ground Eight should be denied without an evidentiary hearing.

8. <u>Ground Nine: Appellate counsel's failure to provide copies of transcripts and documents</u>

a. <u>Raheem's claims</u>

Raheem claims that his appellate counsel was ineffective for failing "to provide Petitioner with the copies of trial transcripts, sentencing transcripts and documents of other proceedings, [which] fell below the standard of reasonableness and was prejudicial." Mot. [1031] at 19. He alleges that he requested these documents from his appellate counsel "several weeks before the initial appellate brief was due, with the intention of assisting appellate counsel with issues about the case that he is not aware of," to no avail. *Id.* Raheem argues that appellate counsel's failure to provide these documents continued to prejudice him in the preparation of his § 2255 Motion. *Id.* at 19-20; *see* Mem. [1032] at 6.

Appellate counsel responds that he

> does agree that Mr. Raheem continually asked for a copy of his trial transcript. As an appointed counsel and due to the cost of preparing the transcript, I attempted to have the transcript sent to Mr. Raheem via jump drive. However the Bureau of Prisons would not accept it.

* * *

> Additionally, after reviewing the trial transcripts and reaching [sic] Mr. Raheem's case, we raised the issues that we felt had the best possibility of success at the appellate level.

Aff. [1046] at 2.

In Reply, Raheem states that this is a "poor excuse and should be rejected." Reply [1068] at 5. According to Raheem, "Appellate Counsel was appointed and knew that he would have to send a copy of the trial and sentencing transcript" under the Criminal Justice Act ("CJA"), and "[t]he amount to send a copy is not costly" and "[w]ould not exceed the Court Voucher of payment." *Id.* Raheem contends that counsel's failure to inquire whether the Bureau of Prisons would accept a jump drive demonstrates that counsel "provided no due diligence at all." *Id.*

b.   Analysis

In support of this Ground, Raheem offers conclusory allegations of prejudice both with respect to his appeal and his ability to prepare and file a pro se § 2255 motion. *See* Mot. [1031] at 19-20; Mem. [1032] at 6. However, "[c]onclusory allegations, unsubstantiated by evidence, do not support the request for an evidentiary hearing." *Reed*, 719 F.3d at 373.

To the extent that appellate counsel was constitutionally required to confer with Raheem on any legal issues to be presented on appeal,[7] Raheem has not

---

[7] *But see, e.g.*, *Hooks v. Roberts*, 480 F.2d 1196, 1197 (5th Cir. 1973) ("At the threshold, we lay to rest appellant's notion that appointed counsel prosecuting an appeal on an adequate trial record is constitutionally required to confer with his client about the legal issues to be presented on appeal."); *United States v. Kiel*, No. 1:13CR51-LG-RHW-2, 2018 WL 9669919, at *3 (S.D. Miss. Aug. 16, 2018) (noting that the "same reasonableness standard applies to claims of deficient performance on appeal" as at trial, "[b]ut appellate counsel is not

identified any legal issues that should have been presented but were not.  *See* Mot.
[1031]; Mem. [1032].  Moreover, "[c]ounsel does not need to raise every nonfrivolous
ground of appeal available."  *United States v. Williamson*, 183 F.3d 458, 462 (5th
Cir. 1999) (quotation omitted).[8]  Appellate counsel states that he raised the issues
that he felt had "the best possibility of success at the appellate level."  Aff. [1046] at
2.  The unidentified issues Raheem purportedly sought included could very well
have been frivolous, which would necessarily mean that appellate counsel was not
ineffective in not raising them.  *See, e.g., Preston*, 209 F.3d at 785 (holding that
failing to make a frivolous objection cannot constitute ineffective assistance of
counsel); *Merritt*, 1994 WL 242561, at *3 (holding that, because a defendant's
argument was frivolous, "his attorney's failure to raise it on appeal does not amount
to ineffective assistance of counsel").   Nor would failure to raise a meritless
argument prejudice Raheem "because the result of the proceeding would not have
been different had the attorney raised the issue."  *Kimler*, 167 F.3d at 893.

Even if nonfrivolous, Raheem "has not demonstrated [any] issue he sought to
pursue was clearly stronger than the issue counsel pursued on direct appeal," which

---

'constitutionally required to confer with his client about the legal issues to be presented on
appeal'" (quoting *Hooks*, 480 F.2d at 1197)).

[8] *See also, e.g., Smith v. Robbins*, 528 U.S. 259, 288 (2000) (reversing and remanding the
grant of a new direct appeal on a § 2254 habeas petition, and stating that "appellate
counsel who files a merits brief need not (and should not) raise every nonfrivolous claim,
but rather may select from among them in order to maximize the likelihood of success on
appeal"); *United States v. Redd*, 619 F. App'x 333, 337 (5th Cir. 2015) (holding that
"[a]ppellate counsel need not raise every nonfrivolous appellate issue, but should instead
select issues that will maximize the likelihood of success on appeal," and that "conclusory
contentions that the [defendant's] proposed sentencing claims were stronger than the
appellate issues presented by [counsel] and that such claims would likely have succeeded if
raised are insufficient to support a constitutional claims of ineffective assistance").

precludes a finding of deficient performance. *United States v. Williams*, 476 F. App'x 1, 2 (5th Cir. 2012). Nor has Raheem identified any "rare," "directly controlling precedent" on a "discrete, purely legal issue" that appellate counsel failed to cite in his brief which denied him adequate representation on appeal. *Williamson*, 183 F.3d at 463 & n.7.

Finally, Raheem has not articulated how "it is 'reasonably likely' the result [of his appeal] would have been different" had counsel raised any specific issue that he purportedly requested be included in his brief, which would be necessary to demonstrate prejudice. *Harrington*, 562 U.S. at 111; *see* Mot. [1031]; Mem. [1032]; Reply [1068]. In assessing prejudice under *Strickland*, the question is whether it is "reasonably likely" the result would have been different had counsel acted differently, and "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 111. Raheem has not adequately alleged facts from which one could find a substantial likelihood of a different result if appellate counsel would have raised any specific issue that Raheem purportedly desired included in the brief. *See id.*; Mot. [1031]; Mem. [1032]; Reply [1068]. Therefore, even if Raheem had adequately alleged deficient performance, which he has not, failure to establish prejudice defeats Raheem's ineffective assistance of counsel claim concerning his appeal. *See Harrington*, 562 U.S. at 111; *Strickland,* 466 U.S. at 687-88; *Tucker*, 115 F.3d at 280.

Raheem's assertion that his ability to prepare and file a § 2255 motion was hampered because appellate counsel failed to provide him the trial and sentencing

transcripts is similarly unavailing.  *See* Mot. [1031] at 19-20; Mem. [1032] at 6.

Again, Raheem offers only conclusional allegations that these transcripts, which are

public records available on the Court's docket through its PACER (Public Access to

Court Electronic Records) service, would have assisted him with preparing his

§ 2255 Motion, and he does not adequately explain why they were needed.  Raheem

was present for all proceedings, and unsupported conclusional allegations that he

needed the transcripts are insufficient to require an evidentiary hearing.  *See Reed*,

719 F.3d at 373.[9]  Therefore, Ground Nine of Raheem's § 2255 Motion should be

denied without an evidentiary hearing.  *See id.*

 In sum, accepting all of Raheem's allegations as true, he has not

demonstrated that he is entitled to any relief under § 2255, and his Motion [1031]

should be denied without an evidentiary hearing.

### III.  CONCLUSION

 Because the Motion, files, and records conclusively show that Raheem is

entitled to no relief, the Court finds that his Motion [1031] to Vacate, Set Aside, or

Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255

---

[9]  Raheem filed a Motion [1012] for Free Copy of Trial Transcripts and the Motion [1015] to Compel Defense Counsel to Provide a Copy of Trial and Sentencing Transcripts prior to filing his § 2255 Motion [1031], which was denied.  *See* Order [1016] at 2-3 (denying Raheem's Motion [1012] pursuant to 28 U.S.C. § 753(f) because he did not have an appeal or a § 2255 motion pending at that time and was "not entitled to obtain copies of the trial and sentencing transcripts at Government expense for purposes of searching the record for possible error" (citing *Walker v. United States*, 424 F.2d 278, 279 (5th Cir. 1970); *United States v. Webb*, 109 F.3d 768, 1997 WL 115286, at *1 (5th Cir. 1997)).  Raheem did not re-urge his request after he filed his § 2255 Motion [1031], and it does not appear from briefing that any transcripts are "needed to decide the issue[s] presented by" Raheem's Motion [1031].  28 U.S.C. § 753(f).

should be denied without an evidentiary hearing.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant Rasaq

Aderoju Raheem's Motion [1069] to Amend, Motion [1118] for Leave to File a

Supplemental Reply, and Motion [1031] to Vacate, Set Aside, or Correct Sentence by

a Person in Federal Custody pursuant to 28 U.S.C. § 2255, are all **DENIED**.

**SO ORDERED AND ADJUDGED**, this the 22nd day of August, 2023.

_s/ Halil Suleyman Ozerden_
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE