**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| | § | |
| **v.** | § | **Criminal No. 1:14-cr-33-HSO-BWR-3** |
| | § | |
| | § | |
| **RASAQ ADEROJU RAHEEM** | § | |

**ORDER DENYING DEFENDANT RASAQ ADEROJU RAHEEM'S MOTION [1182] FOR RECONSIDERATION**

In May 2026, Defendant Rasaq Aderoju Raheem ("Raheem" or "Defendant") sought compassionate release under 18 U.S.C. § 3582, *see* Mot. [1176], which the Court denied without prejudice for failure to exhaust, *see* Order [1181]. Raheem now seeks reconsideration, *see* Mot. [1182], which should be denied.

I. BACKGROUND

On October 7, 2014, Raheem was charged in a Second Superseding Indictment [156] in this case on three conspiracy Counts (Counts 1, 2, and 9) and for six different violations of 18 U.S.C. §§ 2 and 1341 (Counts 3 through 8). *See* 2d Superseding Indictment [156] at 4-32. Following a jury trial, Raheem was convicted of the crimes charged in Counts 1, 2, 3, 4, 7, and 9. *See* Verdict Form [788] at 1-8.

According to the Presentence Investigation Report ("PSR") prepared by the United States Probation Office, *see* PSR [862] (filed under seal), Raheem's total offense level would have been a 47, *see id.* at 24, but "in those rare instances where the total offense level is calculated in excess of 43, the offense level will be treated

as a level 43," *id.* at 62. Based upon a total offense level of 43 and a criminal history category of I, the Guidelines imprisonment range was life, but because the statutorily-authorized maximum sentences for all Counts of conviction were less than the maximum Guidelines range, the Guidelines range of imprisonment was 1,380 months. *See id.* at 65 (citing U.S.S.G. § 5G1.2(b)). At the conclusion of a lengthy sentencing hearing, the Court sentenced Raheem to a total of 1,380 months of imprisonment. *See* J. [878] at 3.

Raheem, who is now 42 years old, is presently incarcerated at United States Federal Correctional Institution ("FCI") Miami in Miami, Florida. *See* Envelope [1182-2] at 1; PSR [862] at 4 (filed under seal). With a projected release date of September 23, 2051, he has served approximately 78% of his 1,380-month sentence of imprisonment. *See* J. [878] at 3; Bureau of Prisons ("BOP") Inmate Locator, https://www.bop.gov/inmateloc/ (stating "Release Date: 09/23/2051" for Rasaq Aderoju Raheem, Register Number: 18368-043) (last visited August 10, 2026).

Proceeding pro se, on May 19, 2026, Raheem filed a Motion [1176] for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A). *See* Mot. [1176]. He argued that his sentencing range should be reduced because it "is grossly disproportionate under current legal standards." *Id.* at 1; *see id.* at 2 (citing U.S.S.G. § 1B1.13(b)(6)). Raheem insisted that his sentence was based upon a fundamentally flawed loss calculation, *see id.* at 1, and he cited his exceptional rehabilitation and "perfect disciplinary record," *id.* at 2. Raheem asked that the Court "reduce his sentence to time served and order his immediate release," or

alternatively, reduce his term of imprisonment. *Id.* The Government opposed the Motion [1176] on grounds that Raheem had failed to first petition the BOP for release and thus had not exhausted his administrative remedies. *See* Resp. [1177] at 4-5. And even if properly exhausted, Raheem had not shown any extraordinary and compelling reasons warranting early release, and the factors set forth at 18 U.S.C. § 3553(a) weighed against it. *Id.* at 6-15. On July 13, 2026, the Court denied Raheem's Motion [1176] without prejudice for failure to exhaust.

Raheem's Motion [1182] for Reconsideration contends that he properly exhausted administrative remedies before filing his Motion [1176] for Compassionate Release. *See* Mot. [1182]. He reiterates that he sent the Warden of FCI Miami an electronic request for compassionate release on March 16, 2026, and when 30 days passed with no response, he filed the Motion [1176] in accordance with 18 U.S.C. § 3582(c)(1)(A). *See id.* at 1. As proof of this request, Raheem now states that on May 19, 2026, which was approximately 64 days after his request to the Warden, he received a response. *See id.*; *see* Ex. [1182-1] at 1 (directing Raheem to resubmit his request with one specific category if he wished to be considered for compassionate release). Raheem asks the Court to grant his original Motion [1176] for Compassionate Release and afford him early release. *See* Mot. [1182] at 1.

## II. DISCUSSION

### A. Relevant Legal Authority

"Courts typically construe a motion to reconsider a denial of compassionate release as a motion to alter or amend a judgment under Federal Rule of Civil

Procedure 59(e)." *United States v. Garrett*, 15 F.4th 335, 339 (5th Cir. 2021). "A Rule 59(e) motion calls into question the correctness of a judgment," but it "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004) (quotation omitted). Rule 59(e) is "an extraordinary remedy that should be used sparingly" and "serves the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Id.* at 479 (quotation and alteration omitted).

18 U.S.C. § 3582(b) provides that a judgment of conviction constitutes a final judgment, although it can be modified pursuant to the provisions of 18 U.S.C. § 3582(c). At issue in this case is a requested modification under § 3582(c)(1)(A)(i), which states in relevant part as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . .

*Id.* § 3582(c)(1)(A)(i).

The Fifth Circuit has held that

> a prisoner seeking compassionate release must overcome three hurdles. First, "extraordinary and compelling reasons" must justify the reduction of his sentence. 18 U.S.C. § 3582(c)(1)(A)(i). Second, the reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A). Finally, the prisoner must persuade the district court that his early release would be consistent with the sentencing factors in 18 U.S.C. § 3553(a). *Id.*

*United States v. Jackson*, 27 F.4th 1088, 1089 (5th Cir. 2022); *see also Ward v. United States*, 11 F.4th 354, 361 (5th Cir. 2021) (holding that "the burden falls on the defendant to convince the district judge to exercise discretion to grant the motion for compassionate release after considering the Section 3553(a) factors" (quotations and alterations omitted)).

The applicable United States Sentencing Commission policy statement provides that extraordinary and compelling reasons may exist when certain circumstances, alone or in combination, are present. *See* U.S.S.G. § 1B1.13(b) (2025). Those include certain medical conditions of the defendant; the defendant being housed at a facility affected, or at imminent risk of being infected, by an ongoing outbreak of an infectious disease or a public health emergency; the defendant's age and "experiencing a serious deterioration in physical or mental health because of the aging process"; the defendant's family circumstances; the defendant being a victim of abuse; or other reasons that "are similar in gravity." U.S.S.G. § 1B1.13(b)(1)-(5) (2025).

> Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement. However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in

> determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted.

U.S.S.G. § 1B1.13(d) (2025).

B. Analysis

1. Failure to Exhaust

Based upon the record before the Court at the time Raheem filed his Motion [1176] for Compassionate Release, he had not shown "the lapse of 30 days from the *receipt* of [a compassionate release] request by the warden." 18 U.S.C. § 3582(c)(1)(A) (emphasis added). Having reviewed the present Motion [1182] for Reconsideration and its earlier Order [1181], the Court properly denied Raheem's Motion [1176] without prejudice for failure to exhaust. *See* Order [1181]. Raheem has not shown any error in, or any basis for reconsidering, the Court's prior ruling, and his Motion [1182] for Reconsideration should be denied for this reason. But even if the Court reconsidered and concluded that Raheem had properly exhausted, his request would be denied.

2. Merits of Compassionate Release Request

On the merits, Raheem argued that the Court's use of a "speculative" and "fundamentally flawed loss calculation," the purportedly gross disparity between his and a co-Defendant's total sentence, and his "exceptional rehabilitation" constituted extraordinary and compelling reasons warranting a sentence reduction under § 3582(c)(1)(A). Mot. [1176] at 1-2; *see id.* at 4-5, 8-9. Raheem also insisted that he received an "unusually long sentence" that should be reduced under United States Sentencing Guideline ("USSG") § 1B1.13(b)(6), because his "continued incarceration

constitutes a 'gross disparity' with sentences imposed today." *Id.* at 2 (quoting USSG § 1B1.13(b)(6)); *see id.* at 6-7. He also mentioned that, "[w]hile not the primary basis for this motion, [he] suffers from severe hypertension requiring ongoing medication," and "[l]ong-term incarceration has materially exacerbated this condition." *Id.* at 9. Finally, Raheem contended that the 18 U.S.C. § 3553(a) factors weigh in favor of his release. *See id.* at 9-10.

a. Whether Any Extraordinary and Compelling Reasons Warrant Release

The Court is not persuaded that its loss calculation in this case was either flawed or speculative, undermining Raheem's argument for release on that basis. At sentencing, the Court considered Raheem's and his co-Defendants' objections to the loss amount calculation for purposes of determining the Guidelines range, *see* Tr. [951] at 11-12, and heard testimony and extensive attorney argument on the subject, *see id.* at 16-202. After thoroughly considering the record, the Court determined by a preponderance of the evidence that a reasonable estimate of the loss was $52,150,553.71, and that this loss amount was attributable to Raheem and his co-conspirators under the doctrine of relevant conduct. *See id.* at 241-49. This increased Raheem's offense level by 22 levels. *See id.*; U.S.S.G. § 2B1.1(b)(1). But even if the Court had found Raheem responsible for only half that loss amount, the result would not have changed because any loss amount of more than $25,000,000.00 increased his Guidelines offense level by 22 levels. *See* U.S.S.G. § 2B1.1(b)(1). Moreover, Raheem raised this issue on direct appeal, and the Fifth Circuit found no error in the Court's loss calculation. *See* Op. [1002] at 16-17.

Simply put, this issue does not constitute an extraordinary or compelling reason for reducing Raheem's sentence.

As for the alleged sentencing disparity between Raheem and co-Defendant Teslim Olarewaju Kiriji ("Kiriji"), the two sentences simply cannot be compared. While charged in some of the same counts as Raheem, Kiriji was not charged in Counts 3 through 8, *see* 2d Superseding Indictment [156] at 30-31, and he chose to plead guilty before trial. Kiriji pled guilty to one count, Count 9, which charged him, Raheem, and their co-Defendants with conspiring to commit offenses against the United States, in violation of 18 U.S.C. § 1956. *See id.* at 31-32. Kiriji was sentenced to 240 months on Count 9, *see* J. [396] at 2, which was the same sentence Raheem received as to that Count, *see* J. [878] at 3. There was no disparity in sentencing between Raheem and Kiriji.

Raheem's allegation that he received an "unusually long sentence" under U.S.S.G. § 1B1.13(b)(6) is likewise unavailing. He has not specifically identified any change in the law that would have made his Guidelines range or resulting sentence any lesser today than it was at the time of sentencing. *See* Mot. [1176]; Mot. [1182]. This is required in order for the Guidelines provision Raheem cites to apply. *See* U.S.S.G. § 1B1.13(b)(6) (2025) (providing that "a change in the law . . . may be considered"). Raheem's sentence remains within the relevant statutory thresholds. Count 1 remains punishable by a term of imprisonment of not more than 30 years, *see* 18 U.S.C. §§ 1341, 1343, 1344, 1349; Count 2 still carries a maximum term of imprisonment of five years, *see* 18 U.S.C. §§ 371, 1028, 1029; and Counts 3, 4, 7, and

9 each remain punishable by a maximum of 20 years imprisonment, *see* 18 U.S.C. §§ 1341, 1956. Run consecutively, these result in a total maximum sentence of 1,380 months, which was the same in 2017 when Raheem was sentenced. Nor has Raheem identified any changes to the Guidelines since he was sentenced that would apply to him. *See* Mot. [1176]; Mot. [1182]. The Court finds no "gross disparity" between Raheem's sentence and the sentence that was likely to be imposed when his Motion [1176] for Compassionate Release was filed. *See* U.S.S.G. § 1B1.13(b)(6) (2025). Nor has Raheem identified any factually similar cases showing such a gross disparity with the sentence he received. *See* Mot. [1176]; Mot. [1182]. Rather, count-for-count, Raheem received sentences comparable to those of his co-Defendants.

Even if Raheem's sentence is higher than he would have received if sentenced today, the Supreme Court has held that "[s]uch a disparity is an unexceptional feature of a system in which nonretroactivity is the default," and Congress's deliberate decision not to make an amendment retroactive is not a compelling reason for reducing a sentence and falls "well outside the heartland of compassionate release." *Rutherford v. United States*, 146 S. Ct. 1320, 1330 (2026). Raheem has not demonstrated an extraordinary and compelling reason exists based on any alleged sentencing disparities.

Turning to Raheem's hypertension, under U.S.S.G. § 1B1.13(b), certain medical circumstances can constitute an extraordinary and compelling reason, including:

(A) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(B) The defendant is—

(i) suffering from a serious physical or medical condition,

(ii) suffering from a serious functional or cognitive impairment, or

(iii) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

U.S.S.G. § 1B1.13(b)(1)(A)-(C) (2025).

Even if Raheem suffers from severe hypertension that requires ongoing medication, as he states, he has not argued that the illness is terminal. *See id.*; Mot. [1176] at 8-9. Nor is there any evidence indicating that his medical condition substantially diminishes his ability to provide self-care within the correctional environment, *see* U.S.S.G. § 1B1.13(b)(1)(B) (2025), and to the extent this medical condition requires long-term or specialized medical care, Raheem has not presented evidence showing that such care is not currently being provided, *see* U.S.S.G. § 1B1.13(b)(1)(C) (2025). Instead, according to BOP medical records, Raheem receives daily blood pressure medicine and routine evaluations when he chooses to participate.[1] *See, e.g.,* Ex. [1180] at 9, 14, 19 (filed restricted access).

[1] In February 2026, a physician attempted to evaluate Raheem, but he refused to attend the appointment. *See* Ex. [1180] at 1 (filed restricted access).

Finally, as for Raheem's statements regarding his post-conviction rehabilitation, such rehabilitation "is not, by itself, an extraordinary and compelling reason." U.S.S.G. § 1B1.13(d) (2025). Nor does the Court find that Raheem's rehabilitation, combined with any of the other reasons he cites, constitutes an extraordinary and compelling reason warranting a sentence reduction. *See id.*; Mot. [1176]; Mot. [1182].

In sum, Raheem has not carried his burden to show an extraordinary and compelling reason warranting a sentence reduction.

b. Application of 18 U.S.C. § 3553 Factors

Even if Raheem had shown the existence of an extraordinary and compelling reason justifying early release, the § 3553(a) factors weigh strongly against it. These factors include, among other things, the nature and circumstances of his offenses of conviction and the need for the sentence imposed to reflect the seriousness of the offenses, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public. *See* 18 U.S.C. § 3553(a).

First, Raheem's Guidelines sentence undercounts his actual conduct in this case, as he received two rather substantial reductions in his sentencing exposure. According to the PSR [862], Raheem's adjusted offense level was 47, *see* PSR [862] at 24 (filed under seal), but the maximum total offense level under the Guidelines is a 43, which reduced Raheem's total offense level to 43, *see id.* at 62. Next, based upon a total offense level of 43 and a criminal history category of I, the Guidelines imprisonment range was life, but because the statutorily-authorized maximum

sentences were less than the maximum Guidelines range, the Guidelines range of imprisonment was 1,380 months. *See id.* at 65 (citing U.S.S.G. § 5G1.2(b)). This range was driven by, among other things, the large losses in this case, which far exceeded $25,000,000.00. *See id.* at 23-24.

Raheem's projected release date is September 23, 2051, meaning he has served roughly 78% of his sentence. *See id.*; Bureau of Prisons ("BOP") Inmate Locator, https://www.bop.gov/inmateloc/ (stating "Release Date: 09/23/2051" for Rasaq Aderoju Raheem, Register Number: 18368-043) (last visited August 10, 2026). The Court considers significant the very serious nature of Raheem's offenses of conviction and the length of time he has served. In addition, his conduct victimized numerous individuals, and there is a strong need for deterrence with respect to Raheem's conduct. Considering the totality of the record before it, releasing Raheem from incarceration at this time would not reflect the gravity of his offenses, afford a just punishment, protect the public, or afford adequate deterrence. *See* 18 U.S.C. § 3553(a). Even on the merits, Raheem's Motion [1176] for Compassionate Release should be denied.

## III. CONCLUSION

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant Rasaq Aderoju Raheem's Motion [1182] for Reconsideration is **DENIED**.

**SO ORDERED AND ADJUDGED**, this the 14th day of August, 2026.

*s/ Halil Suleyman Ozerden*

HALIL SULEYMAN OZERDEN
CHIEF UNITED STATES DISTRICT JUDGE